UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                  CASE NO. 07-11667

SHERLYN ALCAZAR                            SECTION "B"

    DEBTOR                                            CHAPTER 13

**<u>MEMORANDUM OPINION</u>**

       This matter came before the court on November 8, 2007 as a hearing on the motion of Villa D' Orleans Condominium Association, Inc. (the "Villa") to determine inapplicability of automatic stay or, alternatively, for relief from the automatic stay (P-14) and on the objection thereto filed by Sherlyn M. Alcazar (the "debtor"). At the hearing the court determined that no stay was in effect, and the parties agreed to treat the debtor's objection to the motion for relief from the stay as a complaint to avoid the sale of property pursuant to 11 U.S.C. §§ 547 and/or 548 of the Bankruptcy Code. After considering the evidence and the briefs, the court finds that the property was conveyed for a reasonably equivalent value, and the sale cannot be avoided.

**I.**     **<u>Background Facts</u>**

       The Villa is a condominium association that manages the property located at 3030 Edenborn Avenue, Metairie, Louisiana 70002 (the "property"). The debtor bought and moved into Unit 105 on August 1, 2001. Beginning in April of 2002, the debtor began making late and partial payments of her proportionate share of the annual common expenses for the property, which resulted in the incurrence of late charges. The debtor also incurred additional fines for not disposing of trash and not maintaining her condominium unit in good repair. The debtor further failed to pay court costs and legal fees assessed as a result of legal actions taken against her to enforce her obligations to the Villa.

After several judgments were entered against the debtor, she entered into a consent judgment with the Villa on March 10, 2006, whereby she agreed to pay the Villa $5,189.42.[1] The debtor only partially satisfied the consent judgment, and by July 11, 2006, the Villa had received payment of $2055.00. The Villa then requested a writ of fieri facias, directing the Sheriff of Jefferson Parish to seize and sell Unit 105 for a sufficient amount to satisfy the remaining $3,683.41 the debtor still owed the Villa.[2] On May 15, 2007, the 24th Judicial District Court for the Parish of Jefferson issued to the Sheriff of Jefferson Parish a writ directing the seizure and sale of the property.

The property was then advertised and set for sale by auction on September 5, 2007 at 10:00 a.m. The Villa's appraiser valued the property at $67,000, and the debtor's appraiser valued the property at $60,000.[3] A third appraiser appointed to resolve the difference fixed the value of the property at $65,000.[4] On September 5, 2007, the auction began as scheduled, and at 10:20 a.m., the auction concluded with respect to the debtor's property.[5] James Campora, the sole bidder, was adjudicated the purchaser of the property. The purchase price was the opening bid of $43,334.00.[6]

Less than half an hour later, at 10:47 a.m., the debtor filed her Chapter 13 petition for relief with this Court. When the purchaser later tendered a check for the balance of the bid,

---

[1] Exhibits 1 though 5.
[2] Exhibit 7. The consent judgment provided that interest, condo fees, late fees and assessments would continue to accrue until the judgment was paid. Thus, at the time the Villa filed the request for the writ, the amount owed had increased to $5,738.41 less payments of $2,055 for a total of $3,683.41.
[3] Exhibits 11 and 12.
[4] Exhibit 13.
[5] Exhibit 18.
[6] Exhibit 19.

$31,946.88, to the Jefferson Parish Sheriff's Office, the sheriff's office refused to execute and deliver an act of sale to the purchaser, presumably to avoid violating the automatic stay.

On September 7, 2007, the Villa filed a motion with this court to confirm the sale and to direct the Jefferson Parish Sheriff's Office to execute and deliver an act of sale to the purchaser and set the matter for an emergency hearing.[7]  On September 11, 2007, Judge Elizabeth W. Magner denied the emergency motion on the basis that sheriffs' sales are generally for inadequate value, and that the debtor should be given a chance to prepare a plan.[8]

On September 18, 2007, the Villa filed a motion and incorporated memorandum to determine the inapplicability of the stay or, alternatively, for relief from stay to allow the sheriff's office to execute and deliver an act of sale to the purchaser.[9]  The Villa asserted that the sale was consummated in accordance with Louisiana law prior to the bankruptcy filing.  At the hearing on the motion the court determined that the automatic stay was inapplicable because the sheriff's sale took place prior to the Chapter 13 filing.  Because the debtor claimed that the successful bid at the Sheriff's auction was inadequate consideration, the court and the parties agreed to treat the motion as though it were a complaint for fraudulent conveyance or avoidable preference.[10]

## II.  Law and Analysis

The debtor contends that the $43,334 bid for the property at the judicial sale on September 5, 2007 was not a reasonably equivalent value under § 548 of the Bankruptcy Code given that the third party appraisal value of the property was $65,000.  In support of her

---

[7] (P-4).
[8] (P-12).
[9] (P-14).
[10] Trial Transcript at p. 51.

argument, the debtor relies on a decision by the United States Court of Appeals for the Seventh Circuit, *In re Bundles*, 856 F.2d 815 (7th Cir. 1988), for the following propositions: (1) that the bankruptcy court must compare the purchase price to the fair market value of the property as affected by the foreclosure; (2) the bankruptcy court must examine the factors surrounding the foreclosure sale to determine whether the procedures used were designed not only for the creditor to receive the value of his interest, but also for the return of any equity to the debtor. The debtor also alleges that she was made insolvent as a result of the Sheriff's sale. The Villa counters that there was a reasonably equivalent value under the United States Supreme Court's decision in *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), which holds that the price paid at a foreclosure sale conducted in accordance with state law in a non-collusive matter constitutes reasonably equivalent value for purposes of § 548, and that the debtor was not rendered insolvent by the Sheriff's sale.

      Section 548 of the Bankruptcy Code sets forth the powers of a trustee in bankruptcy to avoid fraudulent transfers. It permits the trustee to set aside transfers that are tainted with actual fraud and certain other transfers, commonly referred to as constructively fraudulent transfers.[11] Section 548(a)(1)(B) permits the trustee to avoid any transfer of an interest of the debtor in property if the trustee can establish (1) that the debtor had an interest in property; (2) that a transfer of that interest occurred within two years of the filing of the bankruptcy petition; (3) that the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer;

---

[11] *BFP,* 511 U.S. at 535.

and (4) that the debtor received "less than a reasonably equivalent value" in exchange for such transfer.[12]

The Bankruptcy Code does not define "reasonably equivalent value" and prior to the Supreme Court's decision in *BFP*, courts used numerous approaches in determining whether a debtor received reasonably equivalent value in transfers taking place through a state's foreclosure sale process. One of these cases, *In re Bundles*, which the debtor relies on, holds that the reasonably equivalent value should be determined on a case by case approach that includes an "all facts and circumstances" analysis of the question of reasonably equivalent value, with a rebuttable presumption that the price obtained at a properly conducted foreclosure sale is reasonably equivalent value under § 548.[13] The *Bundles* court rejected the Fifth Circuit's position in *Durrett v. Washington Nat. Ins. Co.*, 621 F.2d 201 (1980), that a sale that yielded 70% of the fair market value of the property was presumptively valid, and the Ninth Circuit's position in *In re Madrid*, 725 F.2d 1197 (9th Cir.1980), that the consideration received at a non-collusive, regularly conducted foreclosure sale constitutes reasonably equivalent value.

The United States Supreme Court resolved the conflicting standards set forth in the aforementioned cases in 1994 when it decided *BFP*. In *BFP,* the Supreme Court overruled all these tests with respect to transfers made through foreclosure sales, holding that consideration paid for transfers effected through foreclosure sales completed in compliance with applicable state law *per se* constitutes reasonably equivalent value, provided that the secured party fully

---

[12] 11 U.S.C. § 548(a)(1)(B). The court realizes that § 548 refers to the trustee, and that as such, the debtor is likely not the proper party to seek avoidance of the transfer, however, the Villa did not raise this issue, and because the court finds that the transfer cannot be avoided in any event, the court will not belabor this point.

[13] *Bundles,* 856 at 824.

complied with all of the statutory requirements of the state foreclosure law.[14] *BFP*'s holding is decisive in this case because the debtor did not produce any evidence to show that the sale of Unit 105 took place at a collusive foreclosure sale, or that all the requirements of Louisiana's foreclosure laws were not met. The Supreme Court made clear that the *BFP* decision was meant to overrule *Bundles*, and thus, the debtor's reliance on *Bundles* is misplaced.

### III. Conclusion

Because the debtor has not proved the elements required for the avoidance of a transfer of property under § 548 of the Bankruptcy Code, her complaint is dismissed. The Jefferson Parish Sheriff's Office is authorized to complete the sale of Unit 105 in accordance with its normal procedures.

New Orleans, Louisiana, April 14, 2008.

_____
Jerry A. Brown
U.S. Bankruptcy Judge

---

[14] *BFP,* 511 U.S. at 545.